**Jeanette OSGUTHORPE, Plaintiff and Respondent,**

**v.**

**Jerry OSGUTHORPE, Defendant and Appellant.**

**No. 890219–CA.**

Court of Appeals of Utah.

March 19, 1990.

On Rehearing May 10, 1990.

David S. Dolowitz, M. Joy Douglas, Cohne, Rappaport & Segal, Salt Lake City, for defendant and appellant.

Kent M. Kasting, Dart, Adamson & Kasting, Salt Lake City, for plaintiff and respondent.

Before GARFF, BILLINGS and DAVIDSON, JJ.

MEMORANDUM DECISION

PER CURIAM:

Defendant, Jerry Osguthorpe, appeals from the trial court's findings of fact, conclusions of law and divorce decree. On appeal, he claims the trial court's findings of fact regarding alimony and child support are unsupported by the evidence and the trial court erred in allocating the parties' resources, failing to award him the gifts his father gave to him during the marriage, and requiring him to pay plaintiff's attorney fees. We affirm.

The parties were married in 1974 and separated in 1988. Four children, who at the time of the divorce ranged in age from eight to twelve, were born as issue of the marriage. Prior to the marriage, both parties essentially completed their undergraduate degrees. In 1974, defendant began veterinarian school, and his father paid for tuition and books. While defendant was in school, plaintiff worked as a waitress and cashier. In 1977, defendant received his degree and began working in his father's veterinary clinic. At trial, defendant testified that he was a consultant for his father and received $2,000 per month. Additionally, defendant stated that he receives $350 per month rental income. After taxes and business expenses, defendant testified that his net income was $1,192 per month and his monthly living expenses were $2,049.60.

Plaintiff testified that she had a college education with an outdated teaching certificate. She worked as a cashier and waitress while defendant was in veterinarian school and was a housewife and mother from 1977 until the parties' separation. At the time of trial, she was employed as an

insurance claims processor, earning a net wage of $770 per month. She testified that she earned $160 from rental property and her monthly living expenses were $2,027.

During the marriage, defendant's father provided the parties with $18,500 for a downpayment on their home on Chris Lane. He also gave them various cash gifts, including a $10,000 Christmas gift in both 1982 and 1983, a $5,000 Christmas gift in 1985, and a $1,000 Christmas gift in both 1986 and 1987.

The court found that defendant's testimony indicated a net monthly income of $1,192.80, including $350 per month from rental property. However, based on a review of all the documents, the court found that defendant understated his income or was underemployed. The court also found plaintiff had a net rental income of $160, and a net monthly salary of $770 due to her employment as an insurance claims processor. Plaintiff's monthly expenses, the court found, were $2,027. The court noted that it had received conflicting testimony regarding whether the parties' tax returns accurately reflected the amount of money available to meet the family's needs and found that the tax returns understated the actual net income available to the parties during the marriage for family and living expenses. The court also found that plaintiff assisted defendant in completing his education by working, caring for the home and raising the children. Based on those facts, the court ordered defendant to pay plaintiff $150 alimony per month for a period of five years, and $1 per year for an additional five year period, or until such time as plaintiff remarries, cohabits or dies, whichever occurs first. In addition, the court ordered defendant to pay child support of $150 per month per child.

With regard to the parties' property, the court awarded plaintiff the home on Hillrise Circle which plaintiff purchased prior to the marriage. In addition, plaintiff was awarded exclusive use and occupancy of the parties' home on Chris Lane, subject to defendant's non-interest bearing equitable lien in the amount of $22,500. The court further found that defendant's father's cash gifts, including the $18,500 downpayment on the Chris Lane home were intended by defendant's father as a gift to both parties for their mutual use and benefit during the marriage. Lastly, the court ordered defendant to pay $3,939.65 of plaintiff's attorney fees.

## I. ALIMONY

Defendant claims the trial court's alimony award is based on erroneous findings of fact regarding defendant's income. Defendant asserts the trial court erred in failing to enter a specific finding regarding defendant's income and in finding defendant was undercompensated or underemployed. Defendant contends that instead of entering an alimony award based on speculation, the court should have made a finding and entered an alimony award based on the evidence. He also claims his alimony and child support award leave him with $442 per month, an insufficient amount on which to support himself.

Trial courts have broad discretion in awarding alimony. *Davis v. Davis,* 749 P.2d 647, 649 (Utah 1988). We will not disturb the trial court's alimony award so long as the trial court exercises its discretion within the standards set by the court. *Id.* In determining alimony, the trial court must consider three factors: 1) the financial conditions and needs of the receiving spouse; 2) the ability of the receiving spouse to produce a sufficient income for him or herself; and 3) the ability of the responding spouse to provide support. *Schindler v. Schindler,* 776 P.2d 84, 90 (Utah Ct.App.1989). If the trial court considers these factors, this court will not disturb the alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion. *Id.*

With regard to plaintiff's financial conditions and needs, the court found that plaintiff had a net monthly income of $770, received $160 per month from rental property, and had $2027 in monthly expenses. The court also reviewed plaintiff's ability to produce a sufficient income for herself in stating that plaintiff assisted defendant in

completing veterinarian school by working and caring for the house and children. The court also found that plaintiff has a college education with a teaching certificate but that her certificate was not presently renewed. At the time of trial, although plaintiff was employed, her employment would soon end. However, the court found that she is capable of finding good, gainful substitute employment.

Regarding defendant's ability to provide support, the trial court found that defendant testified he received $2,000 per month from his employment as a veterinarian and an additional $350 per month from barn rental. After taxes and business expenses, defendant claimed to have a net monthly income of $1,192.80 and monthly expenses of $2049.60. The court reviewed the testimony and the tax returns of the parties and found that defendant receives more monthly income than that reflected on his exhibit. Further, the court found that defendant is employed by his father and was either overpaid when he began his employment or underpaid at present. In determining the amount of alimony to award, the court stated that defendant has the ability to earn more than his present income and has chosen to be employed by his father at a lower salary. Also, the court stated that the tax returns, which indicated a yearly adjusted gross income of between $15,000 and $21,000 from 1982 to 1987, appear to understate the parties' income during the marriage. Based on these facts, the court awarded plaintiff $150 monthly alimony for five years. After five years the court reduced alimony to $1 per year for five years, until plaintiff remarries, cohabits or dies, whichever occurs first.

We find no error in the trial court's failure to make a specific finding regarding defendant's income in this circumstance. The trial court found that defendant was not being candid as to his actual current income or was purposefully underemployed. We defer to the trial court's assessment of the credibility of the witnesses. Utah R.Civ.P. 52(a); *Riche v. Riche*, 784 P.2d 465, 467 (Ct.App.1989). Given the evidence in the record, it was well within the court's discretion to determine that defendant was either earning more than the evidence indicated or had the ability to earn more money. We therefore will not disturb the trial court's alimony award.

## II. CHILD SUPPORT

Similarly, defendant argues the trial court erred in awarding plaintiff monthly child support of $150 per child without entering a specific finding regarding defendant's income. Defendant claims the trial court failed to consider all of the factors set forth in Utah Code Ann. § 78-45-7 (Supp.1989) in accordance with *Jefferies v. Jefferies*, 752 P.2d 909, 911 (Utah Ct.App. 1988).

Under Utah Code Ann. § 30-3-5 (1989), the trial court has broad equitable power to order child support, taking into account the needs of the children and the ability of the parent to pay. *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985). The trial court's finding of fact will not be overturned unless they are clearly erroneous. *Jefferies*, 752 P.2d at 911. "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.'" *Acton v. J.B. Deliran*, 737 P.2d 996, 999 (Utah 1987) (quoting *Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983)). Further, section 78-45-7 enumerates the following material factors that the court must consider in setting prospective support:

(a) the standard of living and situation of the parties;

(b) the relative wealth and income of the parties;

(c) the ability of the obligor to earn;

(d) the ability of the obligee to earn;

(e) the need of the obligee;

(f) the age of the parties;

(g) the responsibility of the obligor for the support of others.

*Jefferies*, 752 P.2d at 911.

Defendant claims the trial court erred in failing to make specific findings on all of the factors. However, the court made find-

ings regarding the relative wealth and income of the parties, their respective abilities to earn, and the children's mother's monthly expenses to provide for the children's needs. Further, the evidence in the record indicates that defendant was thirty-seven at the time of trial, while plaintiff was thirty-five. Defendant again claims the court erred in failing to enter a specific finding regarding defendant's income. Without such a finding, defendant claims, the court cannot determine an appropriate level of child support. We disagree. The trial court considered the evidence and assessed the credibility of defendant's testimony. Given the evidence, the court determined that defendant was either understating his actual income or had chosen employment which paid less than he could otherwise earn. We defer to the trial court's assessment that defendant had an ability to earn more than he purported to earn and find no abuse of discretion in the court's award of child support in accordance with that assessment.

## III. GIFTS

Defendant also contends the trial court erred in failing to award him gifts his father gave to him during the marriage while returning to plaintiff her premarital property. Defendant claims entitlement to various cash gifts and an $18,500 loan his father made available to the parties for a downpayment on the Chris Lane home. Because defendant's father testified that the gifts were intended for his son and not the parties jointly, defendant claims the court should have awarded him those gifts.

There is no fixed formula for determining a division of property in a divorce action. *Naranjo v. Naranjo,* 751 P.2d 1144, 1146 (Utah Ct.App.1988). The trial court has wide discretion in adjusting financial and property interests, and its actions are entitled to a presumption of validity. *Id.* Absent a showing of a clear and prejudicial abuse of discretion, we will not interfere with a property award. *Throckmorton v. Throckmorton,* 767 P.2d 121, 123 (Utah Ct.App.1988).

Section 30-3-5 (1989), provides: "When a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, and parties." In making an "equitable" division, trial courts should generally award property acquired by one spouse by gift and inheritance during the marriage to that spouse together with any appreciating or enhancement of its value unless: 1) the other spouse has contributed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it, or 2) the property has been consumed or its identity lost through commingling or exchanges or where the acquiring spouse had made a gift of an interest in the property to the other spouse. *Mortensen v. Mortensen,* 760 P.2d 304, 308 (Utah 1988). However, in making equitable orders pursuant to section 30-3-5, the court has consistently concluded that the trial court is given broad discretion in dividing property, regardless of its source or time of acquisition. *Burke v. Burke,* 733 P.2d 133, 135 (Utah 1987).

Defendant claims that because the gifts were intended for him, the trial court erred in failing to award him those gifts in accordance with *Mortensen.* However, the trial court found the gifts were intended for both parties and we will not overturn the court's factual findings unless they are clearly erroneous. Utah R.Civ.P. 52(a). The record indicates that although defendant's father testified that the $18,500 downpayment and the other cash gifts given during the marriage were solely for his son, plaintiff testified that she always believed the gifts were for both parties. In addition, both defendant and his father testified that, with one exception, the gifts were made in the form of checks made payable jointly to both defendant and plaintiff. The one check that was made out to defendant only was made at about the time of the parties' separation. The trial judge stated from the bench that the past history of gift giving as compared to the gift given at the time of the separation indicated that defendant's father intended the previous gifts to be for both parties. In light of the evidence in the record, the court's finding

that the cash gifts were intended for both parties is not clearly erroneous. Thus, *Mortensen,* which sets forth a test for gifts given to one spouse during the marriage, is inapplicable. Further, we find no abuse of discretion in the trial court's decision not to award defendant those gifts.

## IV. INTEREST

Defendant also claims the trial court failed to award him interest on his equitable lien on the Chris Lane property pursuant to Utah Code Ann. § 15–1–4 (1986).

According to section 15–1–4 (1986), all judgments, other than those rendered on a lawful contract, shall bear interest at the rate of 12% per annum. In addition, the trial court in a divorce proceeding cannot stay statutory accrual of interest on a judgment for unpaid child support. *Stroud v. Stroud,* 758 P.2d 905, 906 (Utah 1988). However, an equitable lien, unlike a judgment, only gives the lienholder a right to collect the debt out of the charged property. *Citizens Bank v. Elks Bldg., N.V.,* 663 P.2d 56, 58 (Utah 1983). A judgment, on the other hand, is "the final consideration and determination of a court on matters submitted to it in an action or proceeding." *Crofts v. Crofts,* 21 Utah 2d 332, 445 P.2d 701, 702 (1968).

The decree awarded plaintiff exclusive use and occupancy of the Chris Lane home subject to a non-interest bearing equitable lien in favor of defendant for one-half of the present equity in the home. The court stated that the lien amount should be $22,500 and should be paid to defendant when plaintiff remarries, cohabits, sells the home, moves from the home, or when the youngest child reaches the age of majority, whichever occurs first. The equitable lien awarded defendant has not yet been reduced to judgment. Thus, defendant was awarded an equitable lien to which interest does not attach under section 15–1–4. We therefore affirm the trial court's award to defendant of a non-interest bearing equitable lien on the parties' property for $22,500.

## V. ATTORNEY FEES

Finally, defendant maintains the trial court erred in awarding plaintiff attorney fees because there was insufficient evidence of need and reasonableness. To recover attorney fees in a divorce proceeding, the movant must demonstrate that the award is reasonable and that the need of the requesting party compels the award. *Sorensen v. Sorensen,* 769 P.2d 820, 832 (Utah Ct.App.1989). Factors for determining reasonableness include the necessity for the number of hours utilized, the reasonableness of the rate charged in light of the difficulty of the case and the result accomplished and the rates commonly charged for similar services in the community. *Id.*

In this case, there is sufficient evidence to demonstrate plaintiff's need, given her income and financial responsibilities. In addition, plaintiff's attorney profferred that he had been practicing in the area of domestic relations law for fifteen years and was familiar with the rates charged in domestic actions. He also stated that his hourly rate was $100 per hour and he considered that to be reasonable. He itemized the rates charged for associates, paralegals and clerks and stated that those rates were reasonable in his professional opinion. Plaintiff's attorney reviewed his time records and estimated the total fee and cost award would be $7,869.30. The court found that plaintiff's evidence of attorney fees in the amount of $7,879.30 was reasonable and necessary. The court further found that plaintiff does not have the ability to pay the fees and that defendant has the ability to pay a portion of plaintiff's fees and costs. Finally, the court found that the hourly rate is reasonable and consistent with the rate for similar services in the community and the hours expended were necessary.

In light of the evidence in the record, we find sufficient evidence of reasonableness and need regarding the attorney fees. Accordingly, we affirm the award of attorney fees.

Affirmed.

All concur.

ORDER ON PETITION FOR REHEARING

This matter is before the court pursuant to plaintiff's petition for rehearing. Plaintiff claims she is entitled to attorney fees and costs on appeal.

Utah Code Ann. § 30-3-3 (1989) provides that this court may order either party to pay attorney fees incurred, including attorney fees incurred on appeal. *Riche v. Riche,* 784 P.2d 465, 470 (Utah Ct.App.1989). Before a court will award attorney fees, the trial court must find the requesting party is in need of financial assistance and that the fees requested are reasonable. *Bagshaw v. Bagshaw,* 788 P.2d 1057, 1061 (Utah Ct.App.1990).

Defendant claims plaintiff has sufficient means to pay her attorney fees incurred on appeal in light of the court's finding that plaintiff is capable of finding good, gainful employment, the award of alimony and child support, and the property distribution. However, the trial court found that plaintiff did not have the ability to pay her attorney fees incurred at trial and that defendant should pay a portion of plaintiff's attorney fees. Because those findings are supported by the evidence we award plaintiff her costs and reasonable attorney fees incurred on appeal and remand to the trial court for a determination of reasonable attorney fees plaintiff has incurred on appeal.

All concur.